Filed 4/14/14  P. v. Ramirez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JUVENTINO RAMIREZ,<br><br>        Defendant and Appellant. | B247131<br>(Los Angeles County<br>Super. Ct. No.  GA084813) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Teri Schwartz, Judge.  Affirmed.

        David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Juventino Ramirez appeals his conviction of two counts of lewd acts upon a child in violation of Penal Code section 288, subdivision (a), one count of sexual penetration by a foreign object in violation of Penal Code section 289, subdivision (j), and one count of sexual penetration of a minor under the age of ten in violation of Penal Code section 288.7, subdivision (b).[1]  He contends the trial court erred in curtailing his cross-examination of the complaining witness and in giving CALCRIM No. 1110, which informs the jury that to violate section 288, subdivision (a), the touching at issue need not be done in a lewd or sexual manner if the defendant committed the act with the intent of arousing, appealing to or gratifying the lust, passions, or sexual desires of himself or the child.  Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Information*

Appellant was charged by information with two counts of sexual penetration by a foreign object (§ 289, subd. (j), counts one and six), two counts of a lewd act upon a child (§ 288, subd. (a), counts two and three), and two counts of sexual penetration of a minor under the age of ten (§ 288.7, subd. (b), counts four and five).  Counts four and six were dismissed by the prosecution during trial.

B.  *Trial*

1.  *Prosecution Evidence*

J.C., who was nine at the time of trial, testified that in 2011, when she was eight, she was at her maternal grandparents' house during the Labor Day weekend.

---

[1]     Undesignated statutory references are to the Penal Code.

Appellant, his wife, and his daughter also lived in the home.[2]  On the day in question, appellant was babysitting J. and two younger girls.  The three girls wanted to play in a backyard wading pool.  The two other girls went to change and J. was alone in the dining room with appellant.  He picked her up, put her on a chair, and placed his hand into her underpants.  He rubbed her vagina and put his finger inside it.  His actions hurt and scared J.  After a few minutes, she pushed his shoulder and he stopped.  Her vaginal area still hurt when she went to the bathroom later that day.  She told her mother that she was in pain, but at first, said nothing about appellant's actions.  Sometime later, she told her mother that appellant had touched her inappropriately.

J. testified that a similar incident had occurred sometime earlier, when she was at her grandparents' house watching television in the living room.  Appellant was sitting on the sofa with her.  They were alone.  Appellant scooted close to her and put his hand in her pants and touched her vagina.  That time, he circled his hand around, but did not insert anything inside her.  After a few minutes, she pushed his hand away with a pillow.  She did not tell her mother about that occasion.

J.'s mother, Y.C., testified that on the Sunday before Labor Day she dropped J. off at her parents' house early in the morning.  Her parents often babysat J. while she worked and she was aware that they sometimes left J. in appellant's care.  When Y. returned to pick J. up, J. was playing in the wading pool.  Other family members were also present.  At some point, J. stated in front of everyone:  "'It hurts down there,'" pointing to her vaginal area.  Y. thought being in the water for so long had caused irritation and did not ask her to elaborate.  Later that night or the next night, when the two of them were having dinner at a restaurant, J. said

---

[2]        Appellant was J.'s uncle by marriage.  His wife was J.'s maternal aunt.

something about not hurting that much anymore. Y. began to think J. was trying to communicate something and told her that if anyone touched her on her private parts she should say something. J. told Y. that appellant touched her. J. was clearly upset. They left the restaurant and continued the conversation at home, where J. gave more details about the Labor Day weekend incident, but did not tell Y. about the prior occasion. Y. called her husband and law enforcement officials. A deputy spoke to J. privately and subsequently informed Y. about the earlier incident. Y. decided not to have J. examined by a doctor because it would have been invasive.

Detective Denise Fuchs testified that she interviewed J. in September 2011. J. told the detective that appellant put his finger inside her. On October 15, 2011, Y. placed a call to appellant at the instruction of the detective. The conversation was recorded. The transcript was received into evidence.[3] Y. began the conversation by telling appellant that J. had accused him of touching her inappropriately. Y. specifically stated that J. had said the Labor Day incident was the second time appellant touched her "down there."[4] She asked appellant to explain what happened. Appellant stated: "[N]othing bad happened. I did not touch her like . . . in other words, that you're afraid that I may have hurt her or something . . . ." Y. asked him how he touched J. Appellant repeated that he touched her but "did not hurt her or anything." He said he had not told his wife anything and wanted to talk to Y. about it personally. Appellant said he did not know how to repair his action or his fault and asked for help. Appellant said he did not "feel right with [Y.], nor the little girl for having touched her." Y. threatened to tell her husband, and appellant said "the moment you talk to [your husband], I . .

---

[3]    The conversation between Y. and appellant was in Spanish. The jury was provided a transcript with the original Spanish translated into English.

[4]    Y. inadvertently stated the most recent incident occurred on "Memorial Day."

. think I'll be sent to the slammer." He said he was sorry about what happened, asked for Y.'s forgiveness, and said: "if they take me in, well let them take me in." He further stated he had been feeling "very bad, very bad," and asked if she had in mind "filing a suit . . . ."

### 2. *Defense Evidence*

The defense called Robert Whiteman, the sheriff's deputy who interviewed J. in early September 2011, the same night she reported the Labor Day weekend incident to her mother. He testified J. had said nothing about being placed on a chair and, in response to the deputy's question, denied being "penetrated with an object . . . ."

The defense also called several family members and a friend who frequently socialized with appellant and his family. Adriana Ramirez-Guzman, appellant's sister-in-law, who had two teen-aged daughters and one young son, testified appellant appeared to be a faithful and loving husband and father and that she had never seen appellant do anything improper around children. She had no concern about letting him be around her daughters. Juaquin Gonzalez, who had four daughters, testified that appellant had babysat his daughters in the past and he had never seen or heard nothing that would prevent him from having appellant watch them again. Manuela Ramirez, appellant's sister, testified she saw J. in appellant's presence and never saw anything to indicate J. was angry at him. She saw J. greet appellant affectionately at a party that took place in September 2011, several weeks after Labor Day.

Appellant's wife, Erika C., testified that they had a normal and active sexual relationship and that she never saw appellant doing anything inappropriate with any child. On cross-examination, she was confronted with a text she sent to Y. on October 16, 2011. The text stated Erika had "just found out," "fe[lt] really bad,"

5

and "d[id]n't even have the courage to face you." It further stated: "Please, don't hesitate when you make a decision on what you are doing because he's my husband" and "I swear on the life of my babies that I didn't know." The text also stated that Erika wished her daughters had a different father and that she was not "going to defend . . . or excuse him." At trial, Erika attempted to explain the texts by stating: "I didn't apologize because I believe[d] that he did anything. I apologized because of the situation that we were all in . . . ."

Appellant testified. He denied ever touching J.'s vagina and specifically denied touching her inappropriately on the day the three girls went swimming in the wading pool while he was babysitting. He testified that when Y. accused him of touching J. inappropriately in the telephone call of October 15, he thought she was referring to an occasion when he was washing his car and J. was nearby, trying to help. He got up suddenly when his daughter sprayed him with the hose and accidently pushed against J. He grabbed her hips or legs tightly to keep her from falling. He was afraid he might have bruised her and would be charged with "domestic violence." He denied having any sexual interest in children.

### 3. *Rebuttal*

The prosecution re-called Detective Fuchs who testified that when she interviewed J. about the Labor Day weekend incident, J. did not use the word "penetration." J. said appellant rubbed her vaginal area with his fingers and she felt him slip one inside her and rub inside her. J. also said it hurt, causing a burning sensation. Detective Fuchs used her hands as a model of the area and J. put her finger inside the part representing the vagina to demonstrate what she meant.

6

C. *Verdict and Sentence*

The jury convicted appellant of one count of sexual penetration with a foreign object in violation of section 289, subdivision (j) as charged in count one, two counts of lewd acts upon a child in violation of section 288, subdivision (a) as charged in counts two and three, and one count of sexual penetration of a child under the age of ten in violation of section 288.7, subdivision (b) as charged in count five.

The court sentenced appellant to a term of 18 years to life: 15 years to life for count five and three years for count three, to be served consecutively. The court imposed and stayed separate three-year sentences for counts one and two. Appellant filed a timely notice of appeal.

**DISCUSSION**

A. *Cross-Examination of J.*

1. *Background*

In cross-examining J., the defense attorney used the reports of Deputy Whiteman and Detective Fuchs to establish that her statements to sheriff's officials were not entirely consistent with her testimony at trial. For example, he elicited from J. testimony that although she never told anyone about the first incident, she thought about it a lot before the second incident occurred. After counsel showed her Detective Fuch's report, J. testified that she told the detective she had not thought about the first incident at all before the second occurred. Defense counsel also elicited testimony that the first incident lasted several minutes. He then asked J. if she remembered telling the detective the first incident lasted only a few seconds, and showed her the report to see if it refreshed her recollection. After reviewing the report, J. testified that she had said that to the detective and that she

had not been truthful because she did not feel comfortable with the detective and was not thinking.

Later in the cross-examination, defense counsel asked J. whether she had lied to the deputy who first interviewed her. J. said "I don't know." When counsel then asked whether she had been truthful with the officer, J. responded, "Yes." Counsel asked if she recalled telling the deputy when describing the Labor Day weekend incident that appellant had not put anything inside her. She said she recalled this and said she responded as she did because she did not understand the deputy's question.[5] J. confirmed she had not mentioned appellant putting his finger inside her. When counsel asked if she did not mention it because she was confused or because it did not happen, the court sustained an "asked and answered" objection to that question and to two follow-up questions: whether she knew when she was lying and whether she lied to the deputy.

Defense counsel moved to another topic. He asked whether J. told the deputy about being put on a chair. She could not recall. He began to show her the deputy's report to refresh her recollection, when the court asked for a sidebar. At the sidebar, the court asked: "Can we do this another way?" The court stated it was not "very comfortable with [counsel] reading [the reports] and then . . . ask[ing] if that's what she said" because it appeared that when J. read the report, she would say that it refreshed her memory and agree it accurately stated what she said. The court inquired whether counsel could just call the deputy. Counsel responded: "For this one I could. . . . That's fine."

The court went on to explain that it had sustained prior objections because the witness was young, the events were traumatic, and the questions were intimidating. It appeared to the court that J. was "easily being led by what she

_____

[5] As Deputy Whiteman later testified, he had asked J. whether she had "been penetrated with an object."

8

s[aw] on paper" and that her "capacity to remember" had been "somewhat . . . impaired or . . . degraded over time." The court suggested other ways of handling the cross-examination, such as asking the girl why she told the deputies something rather than asking her if she "lied." Defense counsel stated: "I can perhaps ask her a few question about whether she lied . . . ." The court said "I don't want to get in to whether she lied. Because what is going on is she reads what she told the detective. Whether she remembers it or not, she said, yes, she remembers. And then you say: Wasn't that a lie? And I think it's somewhat argumentative with her to do that because I think she is going to tell you that's what she said whenever she reads it." The court continued: "I don't think a nine year old's ability to remember back a year and a half ago is going to include the word 'lie.'. . . I haven't heard anything yet to suggest that we're talking about a child that lied. I think the question is: Did she say that? Is that what she believe happened at the time?" Defense counsel said "okay" and stated that he was cognizant of the court's duty to protect the witness. The court concluded by saying: "[L]et's just be a little bit easier with the questions that involve lies and the reading [of] reports."

After the sidebar, defense counsel resumed his cross-examination of J. He asked further questions about the issue of penetration and whether her statements to the deputy were made when the incident was fresh in her memory, but did not attempt to confront J. with any further inconsistent statements she might have made to sheriff's officials. He did, however, confront her with inconsistent testimony from the preliminary hearing about feeling comfortable with the deputy.

Appellant contends the court violated his fundamental right under our state and federal constitutions to confront witnesses by restricting his cross-examination of J. For the reasons discussed, we disagree.

9

## 2. *Analysis*

Cross-examination to test a witness's memory "'should be given a wide latitude' [citations]." (*People v. Burton* (1961) 55 Cal.2d 328, 343, abrogated on another ground in *People v. Brown* (1994) 8 Cal.4th 746; see also *People v. Schilling* (1987) 188 Cal.App.3d 1021, 1032 ["When cross-examination is designed to impeach a witness, 'the trial judge is expected to allow a wide-ranging inquiry as to any factor which could reasonably lead the witness to present less than reliable testimony.' [Citation.] . . . '[cross-examination] cannot serve its critical function unless trial lawyers are given wide latitude in the scope, subject matter and technique of their questioning . . . .'"].) But because the field of permissible inquiry in this regard is so broad, "the trial judge must be given broad discretion to keep such cross-examination within reasonable bounds . . . ." (*People v. Burton*, *supra*, at p. 343; accord, *People v. Wilson* (2008) 44 Cal.4th 758, 794 ["'Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"]; *People v. Von Villas* (1992) 11 Cal.App.4th 175, 229 ["The confrontation clause allows 'trial judges . . . wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'"]; *People v. Schilling*, *supra*, at p. 1032 ["'Although the right to cross-examine is a significant element in a criminal case, implicit in the constitutional right of confrontation [citation], it is within the court's discretion to conduct the trial and limit cross-examination to those matters properly relevant and admissible. [Citation.]'"].) The Supreme Court has firmly stated that ""'"not every restriction on a defendant's desired method of cross-examination is a constitutional

10

violation."'" (*People v. Lewis* (2001) 26 Cal.4th 334, 375, quoting *People v. Ayala* (2000) 23 Cal. 4th 225, 301.)

Before we determine whether appellant's rights were violated, we must examine whether he preserved this claim for appellate review. (See *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 ["[A]n appellant waives his right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal."]; accord, *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408.) After appellant's counsel, on multiple occasions, had tested J.'s memory and credibility by confronting her with seemingly inconsistent statements found in the interview reports, the court called him to sidebar and advised him to use another method in questioning the girl because she appeared to be agreeing that the reports were accurate representations of what she had told sheriff's officials without undertaking any real reflection. Appellant contends the court's instructions prevented him from bringing up inconsistencies between her interview statements and her testimony concerning the crucial element of penetration. We disagree. The record reflects that the court permitted defense counsel to question J. concerning (a) whether she lied to the deputy, (b) whether she denied appellant put anything inside her when being interviewed by the deputy, and (c) why she answered the deputy's question as she did. The court did not call counsel to sidebar until he had left the topic of penetration and moved on to another area of alleged inconsistency, namely, whether appellant had used a chair to facilitate the abuse. At sidebar, when the court asked whether counsel could simply call the deputy to testify to what J. had told him, counsel stated "[f]or this one I could." When the court suggested that counsel not continue to ask the girl whether she "lied," but instead employ a different method of questioning, counsel said "okay." Having already confronted J. with respect to what he deemed the more significant discrepancies between her testimony and her interview

11

statements, counsel in no way suggested the court's restrictions would unduly limit his ability to complete the cross-examination. We conclude appellant's counsel acquiesced in the court's instructions, and that any issue pertaining to those instructions is forfeited.

Moreover, were we to reach the merits, we would find no unconstitutional curtailment of counsel's right to cross-examination. Counsel had already highlighted several arguable inconsistencies between the interview reports and J.'s testimony, including that she had denied "being penetrated" on the second occasion when she was first interviewed by a deputy sheriff. Counsel had been permitted to ask whether she "lied" and why she denied having been penetrated. Subsequently, counsel called Deputy Whiteman as a defense witness to highlight that she had denied being "penetrated with an object." The court had the right and the duty to keep cross-examination within limits, to avoid repetitious testimony and to protect a young witness from intimidation and harassment. The court did not overstep its bounds.

We find support for our conclusion in *People v. Alcala* (1992) 4 Cal.4th 742. There, the trial court stopped the interrogation after defense counsel repeatedly asked a prosecution witness who had identified the defendant at trial whether she recalled being unable to identify the defendant in a photo lineup. (*Id*. at p. 793.) On appeal, the defendant contended cross-examination had been improperly curtailed. The court found the trial court's ruling appropriate in order to protect the witness from undue harassment in view of the repeated questions permitted on the subject. (*Id*. at p. 794; see Evid. Code, 765, subd. (a).) The court further found no possibility of prejudice in view of counsel's ability to call the police officer present at the photo lineup, who testified that the witness had been unable to identify the defendant when shown his photograph. (*People v. Alcala*, *supra*, at p. 794.) Here, appellant's counsel was permitted to elicit through both J.'s and Deputy

12

Whiteman's testimony that J. had denied "be[ing] penetrated" when interviewed shortly after the incident. His counsel was further allowed to ask J. why she had denied that and whether she had lied to the deputy. The court's curtailment of subsequent questioning concerning other inconsistencies based on the interview reports did not obstruct appellant's ability to put on his defense.

### B. *CALCRIM No. 1110*

#### 1. *Background*

Appellant was charged in counts two and three with violation of section 288, subdivision (a), which provides: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

The trial court instructed the jury in accordance with CALCRIM No. 1110 as follows: "The defendant is charged in Counts 2 and 3 with committing a lewd or lascivious act on a child [under] the age of 14 years in violation of Penal Code section 288(a). [¶] To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully touched any part of a child's body either on the bare skin or through the clothing; [¶] two, the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; [¶] and three, the child is under the age of 14 years at the time of the act. [¶] The touching need not be done in a lewd or sexual manner."

Appellant contends the sentence "[t]he touching need not be done in a lewd or sexual manner" negates an element of the offense and removes that element

13

from the jury's obligation to determine every essential element of the charged crime. We conclude the instruction should not have included that sentence but conclude any error was harmless.

　　　2. *Analysis*

　　In *People v. Sigala* (2011) 191 Cal.App.4th 695, Division Five of this District held that the language at issue merely informs the jury that to violate the statute, the touching need not be both sexually motivated and "lewd."[6] (*Id.* at p. 700.) "'Whether a particular touching is "lewd" and criminal under section 288 cannot be determined separate and apart from the actor's intent.' [Citation.] 'For this reason, the courts have long indicated that section 288 prohibits all forms of sexually motivated contact with an underage child.'" (*Ibid.*, italics deleted, quoting *People v. Martinez* (1995) 11 Cal.4th 434, 438 & 444.) "Conviction under the statute has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim. [Citations.] . . . [A] lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." (*People v. Sigala*, *supra*, at p. 700.) The court concluded that the language at issue was an accurate statement of the law and that giving the instruction was not error. (*Id.* at p. 701.)

　　In *People v. Cuellar* (2012) 208 Cal.App.4th 1067, we concurred that the sentence at issue "apparently was intended as a transcription of the long-established rule that touching of a sexual organ is not required for violation of the statute. [Citation.]" (*Id.* at p. 1071.)[7] We concluded, however, that its inclusion

---

[6]　　The instruction at issue in *Sigala* was CALCRIM No. 1120, defining continuous sexual abuse of a minor in violation of section 288.5, but the language at issue was identical.

[7]　　*Cuellar* also involved CALCRIM No. 1120.

14

was potentially confusing. (*Ibid.*) It was not clear what information the sentence was designed to impart that was not already stated in the remainder of the instruction. If it was intended to reflect that the statute could be violated even though an intimate part of the body was not touched, it would have been simpler and clearer to state "the touching need not be made to an intimate part of the victim's body, so long as it is done with the required intent." (*Id.* at pp. 1071-1072.) Nevertheless, we were satisfied that the instruction did not mislead the jury, as virtually all the touching at issue in the case was sexual rather than incidental in nature, and the evidence of the defendant's guilt was strong. (*Id.* at p. 1072.) Moreover, the prosecutor had not attempted to capitalize on the ambiguity of the language by arguing that the defendant could be found guilty even if his touching of the victim had been innocent, but had instead emphasized the sexual nature of the touching and the evidence establishing the existence of the requisite intent. (*Ibid.*)

Here, as in *Cuellar*, there was no evidence of touching that might have been inadvertent or innocent. The two section 288 charges were based on J.'s description of appellant putting his hand inside her pants and rubbing her vaginal area for an extended period of time. The evidence to support the section 288 violations was overwhelming. J.'s testimony of having been deliberately touched by appellant on her vaginal area on two occasions was unwaivering. The statements appellant made to Y. in the recorded conversation were clear indications of guilt. Accused by Y. of touching J. inappropriately "down there," he repeatedly admitted having touched her, begged Y.'s forgiveness, and expressed concern that he would be "taken in" or sent to "the slammer" if others found out what he had done. As in *Cuellar*, the prosecutor did not attempt in closing argument to mislead the jury about the nature of the offense or the evidence necessary to establish guilt. While the prosecutor repeated the language included

15

in the instruction, she also explained that the touching must have been done with "the intent of arousing, or appealing to, or gratifying lust, passions, or sexual desires of himself or [J.]," and emphasized "there is really no reason for choosing that part of the body when you are alone with a child to touch other than to get aroused, to get off." On this record, any error in giving the instruction to the jury was harmless.

Appellant suggests the instruction was improper because the statute requires an element both *Sigala* and *Cuellar* deemed unnecessary -- that the defendant lewdly commit a lewd and lascivious act. The argument is foreclosed by the Supreme Court's decision in *People v. Martinez*, where the court reversed the lower court's holding that section 288 requires both sexual motivation *and* a lewd or lascivious act, and could not be violated by non-lewd touching, even where the touching was done with sexual intent. (*People v. Martinez, supra*, 11 Cal.4th at p. 438.) The Supreme Court held the crime occurred although neither victim was touched in an inherently lewd manner, and that "section 288 is violated by 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child." (*Id*. at p. 442.) With respect to the defendant's argument that the statutory language required the additional element, the court explained that throughout the statute's history, courts had consistently held that "*any* touching of an underage child is 'lewd or lascivious' within the meaning of section 288 where it is committed for the purpose of sexual arousal," and observed that although the statute had been amended multiple times, "[t]he Legislature has never expressed dissatisfaction with this approach." (*Id*. at pp. 445-446.) In light of this history, the court assumed that "the Legislature is aware of the manner in which the offense has been judicially constructed and . . . has refrained from modifying the substantive terms because it accepts the prevailing view." (*Id*. at

16

p. 446.)  This decision is controlling.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.